IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AMERICAN UNIVERSITY SYSTEM, INC., § § § Plaintiff, § § v. § § AMERICAN UNIVERSITY, and § AMERICAN PUBLIC UNIVERSITY § SYSTEM, INC., § § Defendants. § | Civil Action No. **3:11-CV-282-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Transfer Venue to the United States District Court for the District of Columbia, filed July 5, 2011. After carefully reviewing the motion, response, reply, appendices, supplemental briefs, record, and applicable law, the court determines that it **lacks** personal jurisdiction over Defendants and that venue is improper in the Northern District of Texas. The court, rather than dismiss for lack of personal jurisdiction or improper venue, hereby **transfers** this action to the District Court for the District of Columbia, pursuant to 28 U.S.C. §§ 88, 1406(a), and 1631.

**I.    Factual and Procedural Background**

This is a declaratory judgment action brought by Plaintiff American University System, Inc., ("Plaintiff" or "AUS"), a Washington, D.C. corporation that conducts its day-to-day activities out of Dallas, Texas, against Defendants American University ("AU"), a corporation organized under the laws of the District of Columbia with its principal place of business in Washington, D.C., and American Public University System, Inc., a West Virginia corporation with its principal place of

**Memorandum Opinion and Order - Page 1**

business in Charles Town, West Virginia. *See* Plf. Resp. App., Exh. II at 84, ¶ 4; Def. App. at 1, ¶ 3 & 6, ¶ 3. All three parties are engaged in business in the education industry. Plaintiff AUS facilitates the provision of online educational opportunities by its member universities, including the University of Texas at Arlington, Texas A&M Commerce, and Lamar University, to employees of its member businesses, some of which are located in Texas. *See* Plf. Resp. Exh. II at 85, ¶¶ 6-7. Defendant AU operates a private, liberal arts college in Washington, D.C. *See* Def. App. at 1, ¶ 3 & 3-5. Defendant APUS offers distance learning instruction at the undergraduate and graduate levels in a variety of academic subjects through two constituent online universities — the American Military University and the American Public University. *Id.* at 6, ¶ 4.

APUS obtained registrations from the United States Patent and Trademark Office for the marks "AMERICAN PUBLIC UNIVERSITY SYSTEM," and "AMERICAN PUBLIC UNIVERSITY OF THE AMERICAN PUBLIC UNIVERSITY SYSTEM" for educational services. *Id.* at 7, ¶ 15; *see also* Plf. Resp. App., Exh. I-A at 5, 6. APUS assigned the marks to AU, which then granted back to APUS an exclusive license to use the marks. Def. App. at 8, ¶ 15. After APUS observed Plaintiff in the summer of 2010 at marketing fairs in Dover, Delaware, and Norman, Oklahoma, counsel for APUS sent Plaintiff a letter demanding that Plaintiff "cease and desist" using the name "American University System" on grounds that such use constituted trademark infringement. *Id.* at 9, ¶ 2. Over the next several months, the parties engaged in unsuccessful efforts to avoid litigation. *Id.* at 9-11, ¶¶ 3-10. In late January 2011, APUS's counsel sent Plaintiff a written ultimatum demanding that it cease using the contested mark by February 14, 2011. *Id.* at 10, ¶ 9. In response, Plaintiff filed this lawsuit on February 14, 2011, seeking a judicial declaration that it has not infringed, and does not infringe, any alleged trademarks owned by Defendants and that the marks at issue are invalid

and unenforceable for a variety of reasons, including abandonment. *See* Plf. Compl. [Doc. #1] at 5.

Defendants filed this motion to dismiss on grounds that (a) Plaintiff engaged in improper forum shopping when it filed the declaratory judgment action in anticipation of being sued by Defendants in another forum, (b) this courts lacks personal jurisdiction over AU and APUS, and (c) venue is improper in the Northern District of Texas. In the alternative, Defendants argued that the court should transfer venue to the District of Columbia pursuant to 28 U.S.C. § 1404(a). Plaintiff opposed Defendants' motion and sought leave to conduct jurisdictional discovery, which the magistrate judge granted. The parties filed supplemental briefs and appendices addressing the issue of personal jurisdiction. The motion is now ripe for determination.

## II.     Legal Standard

### A.     Discretionary Jurisdiction

Pursuant to the Declaratory Judgment Act, the court "*may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a) (emphasis added). This decision is within the discretion of the district court, and it must "address[ ] and balance[ ] the purposes of the Declaratory Judgment Act and the factors relevant to the abstention doctrine," before dismissing a declaratory judgment action pursuant to its discretion. *Lawyers Title Ins. Corp. v. Stallion Funding*, No. 3-10-CV-0511-L, 2010 WL 4275278, at *9 (N.D. Tex. Oct. 29, 2010) (*quoting St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994)). The Fifth Circuit has identified seven non-exclusive factors for a district court to consider in deciding whether to exercise such discretion, including:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed

> suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003) (*citing Trejo*, 39 F.3d at 590-91).

### B.    Rule 12(b)(2) - Standard for Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D.Tex. 2003) (*citing WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a

**Memorandum Opinion and Order - Page 4**

compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the

forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id*. at 414 n. 9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D.Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C*, 815 S.W.2d 223, 231 (Tex. 1991)).

### C. Venue

In a federal action brought pursuant to the court's federal question jurisdiction, venue is proper in either a judicial district where any defendant resides, if all the defendants are residents of the state in which the district is located, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or in which a substantial part of property that is the subject of the action is situated. 28 U.S.C. § 1391(b)(1)-(2). Venue is also proper in any judicial

district where a defendant is subject to the court's personal jurisdiction, if there is no district in which the action could have otherwise been brought. *Id.* § 1391(b)(3).

## III.  Discussion

### A.  Discretionary Jurisdiction

In this case, the *Trejo* factors weigh in favor of retaining jurisdiction over Plaintiff's claim for a declaration of noninfringement with respect to Defendants' alleged trademarks. Of particular significance is the absence of a parallel state proceeding involving the subject matter of this dispute. *Sherwin-Williams*, 343 F.3d at 394 ("[T]he lack of a pending parallel state proceeding . . . is a factor that weighs strongly against dismissal."). Additionally, Defendants have accused Plaintiff of trademark infringement and threatened to sue Plaintiff for use of the contested mark. Defendants' counsel sent at least three cease and desist letters to Plaintiff and even forwarded Plaintiff's counsel a draft complaint asserting claims of trademark infringement against Plaintiff. *See* Def. App. at 9-10, ¶¶ 2-5; Plf. Resp. App., Exh. I-V at 81. The nature of Defendants' allegations clearly invokes the Lanham Act, 15 U.S.C. § 1125, and the significance of the federal law issue to the case weighs in favor of the court exercising its discretion to decide this declaratory judgment action. Further, Plaintiff was entitled to bring this declaratory judgment action in federal court rather than wait to see if Defendants ever made good on their threats to sue. *See Sherwin-Williams*, 343 F.3d at 396 (*citing Texas Employer's Ins. Ass'n v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988) (noting that one purpose of a declaratory judgment action is to allow potential defendants to resolve a dispute without waiting to be sued)); *see also Ceramic Performance Worldwide, LLC v. Motor Works, LLC*, No. 3-09-CV-0344-BD, 2010 WL 234804, at *2 (N.D. Tex. Jan. 21, 2010) (retaining jurisdiction over declaratory judgment action involving allegations of trademark infringement where no parallel

**Memorandum Opinion and Order - Page 7**

state proceeding was pending and defendants previously threatened to sue plaintiff for misuse of protected materials).

Defendants contend that fairness considerations weigh in favor of dismissal. In particular, Defendants argue that Plaintiff improperly filed this action to preempt their filing an infringement action in the District of Columbia, noting that Plaintiff filed this lawsuit only after receiving their draft complaint. Plaintiff's conduct, however, does not constitute the type of unfairness that results in dismissal. As the Fifth Circuit has observed,

> The filing of every lawsuit requires forum selection. Federal declaratory judgments suits are routinely filed in anticipation of other litigation . . . . Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of . . . litigation [in a different forum], is not in itself improper anticipatory litigation or otherwise abusive "forum shopping."

*Sherwin-Williams*, 343 F.3d at 391. The *Trejo* factors point toward dismissal only in "a narrower category of federal declaratory judgment lawsuits filed for reasons found improper and abusive, other than selecting a forum or anticipating related litigation." *Id.*; *see also Poly-America, L.P. v. Stego Indus., L.L.C.*, 694 F. Supp. 2d 600, 609 (N.D.Tex. 2010) (observing that *Trejo* factors weigh in favor of dismissal in relatively few cases). In the absence of any evidence that Plaintiff is using the declaratory judgment process to improperly gain access to a federal forum or otherwise achieve an unfair advantage, the court declines to exercise its discretion to dismiss this action.

### B. Personal Jurisdiction

#### 1. Minimum Contacts

With respect to personal jurisdiction, the first issue for analysis is whether Defendants' contacts with Texas allow the court to exercise personal jurisdiction over them. Minimum contacts must be met as to each defendant. *See Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980). The court

may exercise personal jurisdiction either through general or specific jurisdiction. The court examines each below.

### a. General Personal Jurisdiction

#### 1. Defendant AU

Sufficient facts do not exist for the court to exercise general personal jurisdiction over AU. AU avers that it is not incorporated, registered, authorized, or licensed to do business in Texas; has no agent for the receipt of service of process in Texas; does not file tax returns or any administrative reports with the State of Texas; owns no land in Texas; and has no bank accounts, offices, employees, telephone numbers or mailing addresses in Texas. Def. App. at 1-2, ¶¶ 5-14. Thus, AU contends that it lacks the type of contacts that typically underlie general jurisdiction. Plaintiff responds that jurisdiction is nonetheless proper because AU engages in business with Texas companies, sells merchandise to Texas residents, employs Texas residents, conducts recruiting and alumni events in Texas, and solicits funds from Texas residents. In particular, Plaintiff relies on evidence showing that, since October 12, 2005, AU:

- Paid more than $45 million in non-tuition related expenditures to over 800 businesses with Texas billing addresses (*see* Plf. Supp. Resp. App. at 55-76);

- Attended approximately 200 events in Texas, including tradeshows, employment fairs, and recruiting fairs (*see id*. at 29-52);

- Employed between 63 and 125 individuals with Texas mailing addresses (*see id*. at 78);

- Entered into several contracts containing Texas forum selection clauses (*see id*. at 115-33);

- Sponsored 18 alumni events in Texas (*see id*. at 134-36);

- Made 77 unexplained contacts with alumni or parents (*see id*. at 53-54);

- Sold $12,530 in merchandise from its online stores to Texas residents (*see id.* at 15);

- Received $205,180 in "WAMU" underwriting from Texas residents (*see id.* at 77);

- Received $196,475 in unexplained awards connected to Texas (*see id.* at 17);

- Received grants in an undisclosed amount to perform studies in Texas (*see id.* at 82); and

- Coordinated with Austin College and Southern Methodist University to administer its Washington Semester Program, wherein students from these Texas institutions attend AU for a semester. The students pay their home institution for tuition, but pay AU directly for housing, meal plans, health insurance, and other fees. *See id.* at 81.

Even when viewed in the aggregate, AU's contacts in Texas do not rise to the level required to justify the exercise of general personal jurisdiction. Courts consistently deny general personal jurisdiction in cases where the evidence reveals contacts similar to, and even more substantial than, those identified by Plaintiff. *See Helicopteros Nacionales*, 466 U.S. at 416-19 (concluding there was no general jurisdiction where defendant regularly purchased 80% of helicopter fleet and other equipment and services in Texas, traveled to Texas to negotiate purchase of helicopters, and sent pilots for training to Texas); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717-18 (5th Cir. 1999) (finding no general jurisdiction even though defendant's revenues derived from Texas residents totaled millions of dollars a month); *PrimeSource Bldg. Prods., Inc. v. Phillips Screw Co.*, No. 3-07-CV-0303-M, 2008 WL 779906, at *7 (N.D.Tex. Mar. 25, 2008) (same despite evidence that defendant regularly traveled to Texas to inspect licensees' manufacturing facilities, engaged in marketing activities in Texas, sponsored a booth at a convention in Texas, and attended trade shows in various Texas cities). For general jurisdiction to exist, a defendant must not only do business *with* Texas, but it must also have a business presence *in* Texas. *Johnston v. Multidata Sys.*

**Memorandum Opinion and Order - Page 10**

*Int'l Corp.*, 523 F.3d 602, 613 (5th Cir. 2008). Here, the facts do not establish that AU has a business presence in Texas.

In similar cases involving the issue of personal jurisdiction over an out-of-state educational institution, courts have unanimously determined that the institution is not subject to general personal jurisdiction where its only contacts with the forum state are its involvement in activities that are typical of a nationally prominent university. *See, e.g., Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 541-43 (3d Cir. 1985) (no general jurisdiction despite evidence that medical college enrolled 6% of its students from the forum state, received several hundred thousand dollars of tuition from residents of the forum state, toured cities in the forum state, and established a joint international program with a forum state college); *Corrales Martin v. Clemson University*, No. 07-536, 2007 WL 4531028, at *6 (E.D. Pa. Dec. 20, 2007) (same result despite evidence of university's enrollment and recruitment of students from forum state, participation in athletic, education, and professional events in forum state, solicitation of donations from forum resident, and recruitment of faculty from forum state). Evidence that a university recruits or admits students from the forum state, employs forum residents, receives revenue from the state in the form of tuition or fundraising, or has contacts with prospective students and alumni in the state is simply insufficient to support the exercise of general jurisdiction. *Richards v. Duke University*, 480 F. Supp. 2d 222, 230 (D. D.C. 2007); *Scherer v. Curators of University of Missouri and Law Sch. Admission Council*, 152 F. Supp. 2d 1278, 1282 (D. Kan. 2001); *Gallant v. Trustees of Columbia University in City of New York*, 111 F. Supp. 2d 638, 640 (E.D. Pa. 2000); *Park v. Oxford University*, 35 F. Supp. 2d 1165, 1167 (N.D. Cal.1997), *aff'd*, 165 F.3d 917 (9th Cir. 1998); *Hardnett v. Duquesne University*, 897 F. Supp. 920, 923 (D. Md. 1995); *Ross v. Creighton University*, 740 F. Supp. 1319, 1323 (N.D.

Ill. 1990), *rev'd in part on other grounds*, 957 F.2d 410 (7th Cir. 1992). The court finds nothing in the evidence presented here that would dictate a different result.

Further, AU's operation of its website, www.american.edu, does not support the exercise of general jurisdition. In *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir.1999), the Fifth Circuit adopted a standard for personal jurisdiction from *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). The *Zippo* decision instructs courts to look to the "nature and quality of commercial activity that an entity conducts over the Internet." 952 F. Supp. at 1124; *see also Mink*, 190 F.3d at 336. This test examines a defendant's Internet activities in relation to a spectrum of three areas. *Mink*, 190 F.3d at 336. At one end of the spectrum are defendants who conduct their businesses over the Internet, entering into contracts with residents of other states involving the "knowing and repeated" transmission of computer files over the Internet. *Id.* "Passive" websites are at the other end of the scale, doing nothing more than providing information and advertising to those who access the site. *Id.*; *Fix My PC, LLC v. N.F.N. Assocs.*, Inc., 48 F. Supp. 2d at 643. Passive websites, on their own, do not provide for personal jurisdiction over the owner of the site. *Mink*, 190 F.3d at 336; *Fix My PC*, 48 F. Supp. 2d at 643. In the middle of the spectrum are interactive websites, which allow Internet users to communicate and exchange information with the organization sponsoring the site. *Mink*, 190 F.3d at 336; *FixMy PC*, 48 F. Supp. 2d at 643. In this "middle ground," the exercise of jurisdiction depends upon the level of interactivity and commercial nature of the exchange of information conducted on the defendant's website. *Mink*, 190 F.3d at 336 (*quoting Zippo*, 952 F. Supp. at 1124).

AU's website is "interactive" under *Mink*, a fact which Plaintiff does not dispute. *See* Plf. Resp. Br. at 8; Plf. Supp. Resp. Br. at 8. It is further undisputed that AU advertises and directly sells

products to Texas residents over its website. *See* Plf. Resp. App. at 15, 71-72. AU solicits students over the internet and allows prospective students to submit their applications online. *Id.* at 26-29. AU also solicits monetary donations on its website and provides for the payment of those donations through its website. *Id.* at 44-46. AU's website further provides information about recruiting and alumni events in Texas. *Id.* at 26-35, 39-43. None of this internet activity, however, rises to a level sufficient to justify the exercise of general personal jurisdiction over AU in Texas, a traditional "brick and mortar" university with a physical campus in Washington, D.C. *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (non-resident university's maintenance of website, which allowed users to subscribe to university's journalism review, purchase advertising on website or in journal and submit electronic applications for admission, did not constitute substantial contacts with Texas, so as to support exercise of general personal jurisdiction over university in Texas ); *see also Kloth v. Southern Christian University*, 494 F. Supp. 2d 273, 280-81 (D. Del. 2007), *aff'd*, 320 F. App'x 113 (3d Cir. 2008) (no general jurisdiction over nonresident university that maintained a website that gave general information and allowed students to submit online applications for admission)*; Scherer*, 152 F. Supp. 2d at 1284 (no general jurisdiction over law school where law school maintained website that could be accessed internationally and through which interested students could contact Director of Admissions). Accordingly, the court finds that the facts presented do not allow it to exercise general personal jurisdiction over AU.

### 2.   **Defendant APUS**

Similarly, sufficient facts do not exist for the court to exercise general personal jurisdiction over APUS. Plaintiff relies solely on evidence that purportedly demonstrates that APUS "regularly and systematically conducts a significant amount of business in Texas." *See* Plf. Supp. Resp. Br.

at 5. Specifically, the record shows that APUS spent almost $10 million on products and services from Texas (*see* Plf. Supp. App. at 13); spent approximately $700,000 on advertising in Texas (*see id.* at 7); spent more than $650,000 in non-internet marketing activities in Texas (*see id*. at 9); employed approximately 150 Texas residents, including 129 adjunct faculty members (*see id*. at 11); sold $10,524 worth of merchandise over the internet to Texas residents (*see id*. at 8, 95); provided online educational services to 12,281 Texas residents (*see id*. at 14); offered teacher certification programs designed to lead to licensure in Texas (*see id*. at 113-14); and negotiated block transfer agreements with several Texas community colleges (*see id*. at 111-12). At most, this evidence establishes that APUS does business with Texas; it does not support a finding that APUS has a continuous business presence in Texas. *Helicopteros Nacionales*, 466 U.S. at 416-19; *Johnston*, 523 F.3d at 612-13 (no general jurisdiction despite evidence that defendant purchased over $5.2 million worth of goods from Texas vendors during the five-year period prior to the lawsuit and employed Texas residents who performed work from their homes in Texas).

APUS has no bank accounts, no offices, no telephone numbers, and no mailing addresses in Texas; owns no real property in Texas; and is registered as a foreign corporation with the Texas Secretary of State. Def. App. at 7, ¶¶ 5-9. APUS has its principal place of business in West Virginia, operates administrative offices in Virginia, and maintains some books and records in Maryland. *Id*. at 6, ¶ 3. APUS has no physical campus in Texas, or in any state. Its courses are conducted entirely online, and its students can access the APUS website, www.apus.edu, anywhere Internet service is available. *Id*., ¶ 10. Although the evidence shows that in the past six years APUS has provided educational services through its interactive website to more than 12,000 students with a Texas address, the record is devoid of any facts that show how these services were provided.

**Memorandum Opinion and Order - Page 14**

Plaintiff further fails to identify any evidence that Texas is central to APUS's business. The record shows that, as of September 30, 2011, only 5,722 APUS students provided a Texas address, and this number made up only 5.9% of APUS's students worldwide. Plf. Supp. App. at 14. That APUS operates an interactive website, either by itself or in combination with the other identified contacts, also is insufficient to establish general jurisdiction. *Revell*, 317 F.3d at 471 (noting that the *Zippo* test is "not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction"); *Tempur-Pedic Int'l., Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 373 n.3 (N.D. Tex. 2010) (agreeing that maintenance of interactive website is, by itself, insufficient to establish general jurisdiction). In a case closely on point, a district court in New Jersey found that the exercise of general personal jurisdiction was not proper over an "online university" that provided educational services to students via the internet. *Watiti v. Walden University*, No. 07-4782 (JAP), 2008 WL 2280932, *5-7 (D.N.J. May 30, 2008). In the absence of any authority to the contrary, the court concludes that APUS lacks continuous, systematic and substantial contacts with Texas that would support the exercise of general jurisdiction.

### 2.     Specific Personal Jurisdiction

A court may exercise specific personal jurisdiction over a nonresident defendant when its contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros*, 466 U.S. at 414 n.8. Here, the court finds that Plaintiff has not met its burden of establishing specific personal jurisdiction over Defendants by presenting a prima facie case that personal

**Memorandum Opinion and Order - Page 15**

jurisdiction is proper. *See Ham*, 4 F.3d at 415 (stating that plaintiff carries the burden of presenting a prima facie case of personal jurisdiction); *Stuart*, 772 F.2d at 1192 (same).

Plaintiff makes the conclusory assertion that it is proper for the court to exercise specific jurisdiction over Defendants solely on the basis that Defendants' activities in Texas involve the use of the disputed marks. *See* Plf. Resp. Br. at 11. Plaintiff avers that AU participates in collegiate athletic events in Texas with its teams wearing the disputed trademarks and that both Defendants advertise and directly sell products branded with the marks at issue to Texas residents over the internet. *Id.* at 7, 9. Defendants reply that the mere display of the disputed marks in the forum is insufficient to support the exercise of specific personal jurisdiction in this declaratory judgment action. *See* Def. Supp. Reply Br. at 2. The court agrees with Defendants. By this lawsuit, Plaintiff seeks a declaration that its actions do not violate Defendants' trademark rights. Plaintiff alleges no injury arising from or directly relating to Defendants' display of the disputed marks in Texas or over the internet; nor does it allege that Defendants' conduct infringes any of its rights. Under such circumstances, the exercise of specific personal jurisdiction over either Defendant is improper.

The jurisdictional facts in this case are analogous to those presented in *Expedite It AOG, LLC v. Clay Smith Engineering, Inc.*, No. 3-09-CV-1978-L, 2010 WL 2671314 (N.D. Tex. Jun. 30, 2010), where the court refused to exercise specific jurisdiction over the defendant in a trademark dispute where alleged infringer was not asserting trademark rights. The court rejected the plaintiff's assertion that it could properly exercise specific personal jurisdiction over the non-resident defendant because the defendant's website made merchandise featuring its trademarks available for sale to Texas residents. *Expedite It AOG*, 2010 WL 2671314 at *4. The court found that no nexus existed between the plaintiff's claim for a declaration of noninfringement and the defendant's

**Memorandum Opinion and Order - Page 16**

marketing of branded products through its website. *Id.* Accordingly, the court found no basis for the exercise of specific personal jurisdiction. *Id.* The same result is appropriate here. *Id.*; *see also C.D. Solutions, Inc. v. Tooker*, 965 F. Supp. 17, 20 (N.D. Tex. 1997) (connection between defendants' commercial efforts in forum and declaratory judgment action brought by the alleged infringer seeking declaration that its actions did not constitute trademark infringement too attenuated to support exercise of specific personal jurisdiction). *Cf. Ham*, 4 F.3d at 416 (non-resident defendant's distribution of products into forum does not constitute sufficient contacts to justify assertion of specific jurisdiction in declaratory judgment action in which resident plaintiff seeks declaration of defendant's intellectual property rights). Therefore, the court concludes that Plaintiff has failed to present a prima facie case of specific jurisdiction.

    **C.**    **Venue**

Venue is not proper in the Northern District of Texas. Neither Defendant resides in Texas, and, as set forth above, neither Defendant is subject to personal jurisdiction in Texas; thus, Plaintiff's assertions of venue under sections 1391(b)(1) and 1391(b)(3) are improper. Further, a substantial part of the events or omissions giving rise to Plaintiff's claim did not occur in Texas. As discussed above, there is no allegation of conduct occurring within Texas that gave rise to this declaratory judgment action. *Expedite It AOG*, 2010 WL 2671314 at *5 (display of disputed marks in Texas insufficient to establish venue in declaratory judgment action seeking declaration of noninfringement of defendant's trademark). Therefore, Plaintiff's assertions under section 1391(b)(2) are also improper.

As AU is a resident of the District of Columbia (*see* Def. App. at 1, ¶ 3), and APUS has consented to jurisdiction in the District of Columbia (*see id*. at 7, ¶ 13), the court finds that this

action could have been brought in the District of Columbia and that a transfer to that court is in the interest of justice. 28 U.S.C. § 1631. Accordingly, the court will transfer this action to the District Court for the District of Columbia. *Id.*; 28 U.S.C. § 88.

## IV.     Conclusion

For the foregoing reasons, the court **determines** that Defendants AU and APUS lack sufficient contacts with the State of Texas to establish general or specific jurisdiction over them and that venue is improper in this district. While Defendants are entitled to dismissal of this action, the court concludes that it is in the interest of justice to transfer this action to a district in which it could have been brought originally. Accordingly, the court, rather than dismiss for lack of personal jurisdiction or improper venue, hereby **transfers** this action to the District Court for the District of Columbia pursuant to 28 U.S.C. §§ 88, 1406(a), and 1631. The clerk of the court shall effect this transfer in accordance with the usual procedure.

**It is so ordered** this 13th day of March, 2012.

Sam A. Lindsay
United States District Judge